UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ACA COMPUTER )
INTEGRATORS, INC., )
 )
    Plaintiff, )
  v. ) CIVIL ACTION
 ) NO. 10-11926-JGD
CUBIC TRANSPORTATION )
SYSTEMS, INC., )
 )
    Defendant. )

# MEMORANDUM OF DECISION AND ORDER
# ON DEFENDANT'S MOTION TO DISMISS

March 17, 2011

DEIN, U.S.M.J.

## I. INTRODUCTION

This matter is before the court on the motion of the defendant, Cubic Transportation Systems, Inc. ("Cubic"), to dismiss Count III (93A) and Count IV (fraud) of the complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Docket No. 9). Plaintiff ACA Computer Integrators, Inc. ("ACA") has voluntarily withdrawn the fraud claim. For the reasons detailed herein, this court finds that the complaint fails to state a claim of a violation of Mass. Gen. Laws ch. 93A ("Chapter 93A"). Therefore, the motion to dismiss is ALLOWED.

## II. STATEMENT OF FACTS

In ruling on a motion to dismiss, the court must accept as true all well-pleaded facts set forth in the complaint, and give the plaintiff the benefit of all reasonable inferences. Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999). Applying these principles, the relevant facts are as follows.

ACA is a minority-owned company in the business of "delivering informational technology project management solutions for installation of computer equipment and networks for clients." Complaint (Docket No. 1) ("Compl.") ¶ 2. It is certified by the Commonwealth of Massachusetts as a Disadvantaged Business Enterprise ("DBE"). Id. ¶¶ 9-10.

In May 2007, the Massachusetts Bay Transportation Authority ("MBTA") entered into a 3-year contract with ERG Transit Systems ("ERG") whereby ERG agreed to issue CharlieCards and CharlieTickets and to provide related services, including the installation and servicing of equipment. Id. ¶ 7. ERG entered into a subcontract with ACA whereby ACA was to provide technical maintenance services to the CharlieCards and CharlieTickets systems. Id. ¶ 8. By contracting with ACA, a DBE, "ERG brought itself into compliance with state and federal law which requires that public agencies expending public funds establish goals and an implementation plan for the hiring of [DBEs]." Id. ¶ 9. Allegedly, ACA and its founder, Roosevelt Allen ("Allen"), were "prominently" featured as the chosen DBE contractor in the MBTA/ERG contract. Id. ¶¶ 2, 11. According to the complaint, by prominently identifying Allen and ACA "ERG was not

only signifying its compliance with DBE law but also was trafficking in the name of Mr. Allen and his company who enjoy a good reputation at the MBTA as well qualified sub-contractors."  Id. ¶ 12.

In June 2009, the ERG contract was assigned to Cubic, which continued to use ACA's services with the knowledge of the MBTA.  Id. ¶¶ 13-14.  On April 6, 2010, apparently in accordance with the terms of its contract with the MBTA, Cubic notified ACA that its sub-contract would not be extended.  Id. ¶ 23.  Nevertheless, according to the complaint, on April 7, 2010, Cubic allegedly misrepresented to the MBTA that ACA would continue to serve as the required DBE and obtained an extension of its contract with the MBTA on that basis.  See id. ¶¶ 17-21, 24.  Specifically, ACA alleges that Cubic attended a meeting of the Board of Directors of the MBTA on April 7, 2010, at which time Cubic requested that its contract be extended.  See id. ¶ 16.  At the meeting, MBTA staff member Joseph Kelly told the Board:

> The DBE participation goal for this option remains at the base contract Level of 12%.  Cubic Transportation, Inc. has committed to this rate using ACA Computer Integrators, Inc. for RST installation and maintenance.  ACA Computer Integrators is certified by the State Office for Minority and Woman Business Assistance.

Id. ¶ 18.  According to ACA, "[o]n the basis of that affirmation, the contract extension was approved by the MBTA board."  Id. ¶ 19.

In Count III of its complaint, ACA alleges that Cubic violated Mass. Gen. Laws ch. 93A by substituting "a less expensive subcontractor not part of the original contract without disclosure to the MBTA[,]" id. ¶ 40, and by seeking and obtaining the contract

extension at the MBTA Board Meeting on April 7, 2010 "based on the representation that they would use the Plaintiff consistent with the original contract terms knowing that they had already made the decision not to do so and provided notice of termination to the Plaintiff." Id. ¶ 41. Cubic contends that these assertions fail to state a claim under Chapter 93A. This court agrees.

### III. ANALYSIS

Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings. Thus, when confronted with a motion to dismiss, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the non-moving party. Cooperman, 171 F.3d at 46. Dismissal is only appropriate if the pleading, so viewed, fails to support "'a plausible entitlement to relief.'" Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)).

Two underlying principles must guide the court's assessment as to the adequacy of the pleadings to support a claim for relief. Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009). "'First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' Such conclusory statements are 'not entitled to the assumption of truth.'" Id. (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)) (internal citations omitted). Second, the complaint must state "a plausible claim for relief[.]" Id. (quoting

Ashcroft, 129 S. Ct. at 1950). "This second principle recognizes that the court's assessment of the pleadings is 'context specific,' requiring 'the reviewing court to draw on its judicial experience and common sense.' '[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief.'" Id. (quoting Ashcroft, 129 S. Ct. at 1950) (internal quotations and citation omitted; alterations in original).

"Chapter 93A punishes 'unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.'" Lechoslaw v. Bank of America, N.A., 618 F.3d 49, 58 (1st Cir. 2010) (quoting Mass. Gen. Laws ch. 93A, § 2(a)). For a business such as ACA to maintain a Chapter 93A claim, it must have suffered a "loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice[.]" Mass. Gen. Laws ch. 93A, § 11. See also RSA Media, Inc. v. AK Media Group, Inc., 260 F.3d 10, 16 (1st Cir. 2001) (holding that a causal link between defendant's alleged misconduct and plaintiff's alleged injury "remains a necessary element of a successful 93A claim") (and cases cited). In the instant case, ACA does not allege any harm arising out of Cubic's alleged statements at the Board meeting. Rather, any injury or damage ACA suffered was as a result of the termination of its contract the day before.[1] Even assuming that Cubic wrongfully

---

[1] This case does not raise the issue whether the MBTA could sustain a claim under Chapter 93A based on the alleged misrepresentations at the meeting and this court will not

terminated the contract, where as here ACA "claimed no *injury* apart from that caused by the alleged breach of contract[,]" it has failed to state a claim under Chapter 93A. Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F. 3d 111, 115 (1st Cir. 1997) (emphasis in original). It is well established that "mere breaches of contract, without more, do not violate chapter 93A." Pepsi-Cola Metro. Bottling Co., Inc. v. Checkers, Inc., 754 F.2d 10, 18 (1st Cir. 1985) (citation omitted).

Finally, this court notes that even a generous reading of the complaint shows that Cubic was merely renewing its commitment to meet a stated percentage of DBE participation – the identity of the DBE was clearly secondary. Thus, there are no facts alleged which would support a conclusion that ACA was harmed by any alleged misrepresentation.

## IV. **CONCLUSION**

For all the reasons detailed herein, the defendant's motion to dismiss (Docket No. 9) is ALLOWED. Counts III (93A) and IV (fraud) of the complaint are stricken, as is the request for multiple damages which are recoverable only under Mass. Gen. Laws ch. 93A.[2]

     / s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge

---

address the potential of such a claim.

[2] The court will not strike ACA's request for attorneys' fees to the extent that they may be recoverable under different theories than Chapter 93A.